**The PEOPLE of the State of Colorado, Plaintiff–Appellant**

v.

**Darrell Lee LOPER, Defendant–Appellee.**

**No. 10SA21.**

Supreme Court of Colorado, En Banc.

Nov. 8, 2010.

Daniel H. May, District Attorney, Fourth Judicial District, Nan Scranton, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Brien & Martinez Law, LLC, Esteban A. Martinez, Boulder, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

In this interlocutory appeal brought pursuant to section 16–12–102, C.R.S. (2010), we review an El Paso County District Court order disqualifying the district attorney's office from prosecuting this case against defendant-appellee Darrell Lee Loper. We find that the trial court erred in disqualifying the district attorney under section 20–1–107(2), C.R.S. (2010) because there were no special circumstances that would make it unlikely that Loper would receive a fair trial. We therefore reverse the trial court's order.

## I. Facts and Procedural History

Loper was arrested for allegedly sexually assaulting his girlfriend, F.R., on November 24, 2007, and charged in the El Paso County District Court in the Fourth Judicial District with four counts of sexual assault in violation of sections 18–6.5–103(7)(a), 18–6.5–103(7)(c), 18–3–402(1)(a), and 18–3–404(1)(a), C.R.S. (2010). Loper pled not guilty to all of the charges. After a preliminary hearing, the trial court found probable cause to support the charges. Because F.R. was too intoxicated to remember what happened during the alleged assault, this finding was supported almost entirely by information obtained from her mother, Ernestine Richardson ("Richardson"), a probation officer employed in the Fourth Judicial District. Loper moved to disqualify the district attorney's office and appoint a special prosecutor, arguing that Richardson's affiliation with the district attorney's office would prevent him from receiving a fair trial.

The defense claims that on the night that Loper allegedly assaulted F.R., F.R. was intoxicated, became combative, and undressed in front of her children. To avoid an incident, Loper called Richardson and asked her to take either F.R. or the children from the apartment. Richardson arrived at the apartment a few minutes later with five Domestic Violence Enhanced Response Team ("DVERT") members. Richardson and the DVERT members were on a first-name basis with each other.

Richardson asked the DVERT members to arrest Loper. The DVERT officers refused because they had no basis for doing so. Later, after F.R. had been taken to the hospital because of a fall that she suffered during the commotion, Richardson returned to the apartment to get some of F.R.'s personal items. Richardson and Loper had an argument and Loper called the police. DVERT members returned to the apartment. Richardson again asked them to arrest Loper, but they again refused.

After the alleged assault, F.R. resumed her relationship with Loper. She picked him up from work every day and spent every night with him at their apartment until he was arrested on December 19, 2007, and charged with criminal mischief for allegedly breaking the windshield of F.R.'s car. Text messages that F.R. sent to Loper indicate that she had no idea that he would be arrested.[1]

While in jail, Loper was charged with sexual assault for the incident on November 24, 2007. During a bond hearing on the sexual assault charges, a DVERT officer appeared in person and sought an enhanced bond based on false information that there were other domestic violence charges against Loper involving F.R.[2]

In addition to moving for disqualification, defense counsel filed complaints against Richardson with the state probation services, the local probation department, and the district attorney's office. In the latter complaint, defense counsel requested an investigation into Richardson's role in Loper's arrest and prosecution.

Apart from the events that transpired on the night of the alleged sexual assault, Loper and Richardson had what can best be described as a strained relationship. Richardson disapproved of Loper's relationship with F.R. and made many attempts to sabotage it.

According to Loper, Richardson unsuccessfully attempted to have Loper fired from his job, assaulted him, accessed his criminal history, threatened to "make things happen against him" if he did not end his relationship with her daughter, and reported him to law enforcement for breaking a car windshield, which resulted in charges being filed against him. Richardson also attempted to set F.R. up with another man. During this set up, F.R. alleges that this man, along with another man whom her mother knew, took her away against her will and later sexually assaulted her.[3] According to F.R., Richardson told her that the incident was supposed to teach her a lesson and discourage her from continuing her relationship with Loper.[4]

The trial court granted Loper's motion to disqualify the district attorney and appoint a special prosecutor, finding that Richardson was the "driving force" behind the charges. Several other factors contributed to the trial court's findings, including: that it was clear from text messages from F.R. to Loper that she had no idea that he was going to be arrested and that the charges were not brought at her insistence; that Richardson indirectly participated in the bizarre incident where F.R. was sexually assaulted by the two men that Richardson knew; that Richardson's credibility would be at issue in the case; that the district attorney's office and the Probation Department were interrelated; that there was a possibility that criminal charges could be filed against Richardson; that it would be necessary to call into question the actions of the DVERT team and determine if there was outside influence; and that the district attorney's office must investigate Richardson. The trial court concluded that these factors, taken together, presented "suspicious circumstances" that raised serious concerns about the manner in which the district attorney brought the case and "[left]

---

1. According to the text messages, F.R. was concerned about Loper and tried to pick him up at work and also looked for him at his house.

2. The trial court acknowledged that, although there is occasionally a request for an increased bond in the probable cause paperwork, it was unusual for a DVERT member to appear in person at a bond hearing.

3. Police investigated these events but filed no charges.

4. Text messages sent by F.R. to Loper provide a chilling account of the evening and support F.R.'s allegation that Richardson was behind the whole incident.

a bad smell"[5] warranting disqualifying the district attorney's office.

The People appealed this decision to this Court pursuant to section 16–12–102.

## II.  Analysis

### A.  Standard of Review

■■ We review a trial court's decision to disqualify a district attorney for an abuse of discretion. *Dunlap v. People*, 173 P.3d 1054, 1094 (Colo.2007) (citing *People v. N.R.*, 139 P.3d 671, 678 (Colo.2006) and *People v. Palomo*, 31 P.3d 879, 882 (Colo.2001)).  A trial court abuses its discretion when its decision is "manifestly arbitrary, unreasonable, or unfair."  *Id.* (citing *Palomo*, 31 P.3d at 882).

### B.  The Disqualification Statute— § 20–1–107

Section 20–1–107(2), C.R.S. (2010)[6] provides an inclusive list of circumstances under which a district attorney may be disqualified.  *See People v. N.R.*, 139 P.3d at 675.  These circumstances include: (1) when the district attorney has a personal interest in the case; (2) when the district attorney has a financial interest in the case; and (3) when there are special circumstances that would render it unlikely that the defendant would receive a fair trial. § 20–1–107(2).

Prior to 2002, the disqualification statute stated that a district attorney could be disqualified "[i]f the district attorney is interested or has been employed as counsel in any case which it is his duty to prosecute or defend." § 20–1–107, C.R.S. (2001) (amended 2002).  We interpreted this version of the statute to require disqualification if there was an "appearance of impropriety." *See, e.g., People v. C.V.*, 64 P.3d 272, 274 (Colo.2003).  In *N.R.*, however, we made it clear that the 2002 amendment to section 20–1–107 eliminated the appearance of impropriety standard and that the circumstances enumerated in the statute were the *only* bases for disqualifying the district attorney.  139 P.3d at

675; *People v. Perez*, 201 P.3d 1220, 1229 (Colo.2009) ("[T]he statute enumerates the *only* circumstances under which a district attorney may be disqualified." (emphasis in original)).

### C.  Special Circumstances

■■ In this case, the trial court disqualified the district attorney under the "special circumstances" prong of section 20–1–107.  A party who moves to disqualify the district attorney based on this prong bears the burden of showing that it is unlikely that the defendant will receive a fair trial.  *Perez*, 201 P.3d at 1229.  Whether it is likely that a defendant will receive a fair trial is the most important inquiry in our decision to disqualify a district attorney.  *Dunlap*, 173 P.3d at 1094–95.  To prove this, there must be actual facts and evidence in the record supporting the contention, not mere hypothetical information.  *See Perez*, 201 P.3d at 1230 n. 15; *Dunlap*, 173 P.3d at 1095 (an allegation that the defendant would not receive a fair trial must be supported by the record).

We have not specifically defined what circumstances qualify as "special circumstances" to render it unlikely that a defendant would receive a fair trial.  We have, however, examined that prong of the statute in the past and our resolution of those cases indicates that the "special circumstances" must be extreme to justify disqualifying the district attorney.  *See People v. Jimenez*, 217 P.3d 841, 858 (Colo.App.2008) (citing *Dunlap*, 173 P.3d at 1095) (even potential wrongdoing by the prosecutor is not sufficient to automatically disqualify the district attorney).

In the cases that we have decided, we have only found one situation where the "special circumstances" were sufficiently extreme to justify disqualifying a district attorney under section 20–1–107(2).  In *People v. Chavez*, we held that a district attorney who had a previous attorney-client relationship with the defendant should be disqualified when that re-

---

5.  Technically, it was Loper's attorney who stated that the facts of the case "left a bad smell." The trial court then agreed, stating that "[defense counsel] suggests that taken all together, certainly I believe the word was 'leaves a bad smell to it' or something of that nature.  Well, it does."

6.  We cite to the most recent Colorado Revised Statutes because all of the events of this case occurred after the most recent amendments in 2002.

lationship was substantially related to the case in which the defendant was being prosecuted. 139 P.3d 649, 654 (Colo.2006); *see also People v. Manzanares,* 139 P.3d 655, 658–59 (Colo.2006) (holding that, if a defendant was previously represented by someone in the district attorney's office and confidential information about the defendant was shared within the office, there may be special circumstances to warrant disqualification). Because the district attorney had confidential communications regarding the pending case, we held that it was unlikely that the defendant would receive a fair trial. *Chavez,* 139 P.3d at 654.

Conversely, we have declined to find such special circumstances in several cases where, as in this one, the facts raise concerns of impropriety but do not have any bearing on whether the defendant would be likely to receive a fair trial. In *N.R.,* we held that there were not special circumstances when the district attorney had received substantial support from the victim's family in his political campaign and his decision to prosecute the defendant reversed the former district attorney's decision not to prosecute. 139 P.3d at 674. Even though the district attorney might have been indebted to the victim's family, we held that this did not bear upon whether the defendant would be unlikely to receive a fair trial. *Id.* at 678.

Similarly, we held that there was not sufficient evidence to show that a defendant was unlikely to receive a fair trial when a district attorney had previously represented the victim in a separate case, *People v. Lincoln,* 161 P.3d 1274, 1281 (Colo.2007), allegedly stole relevant medical records, *Dunlap,* 173 P.3d at 1094–95, and was likely to testify as a witness in the same proceeding, *C.V.,* 64 P.3d at 276.[7]

Although such circumstances may cast doubt upon a district attorney's motives and strategies, they do not play a part in whether a defendant will receive a fair trial. Because the General Assembly modified section 20–1–107 to create an inclusive list of situations where disqualification is proper and eliminat-

ed the "appearance of impropriety" standard, facts showing an appearance of impropriety are no longer relevant to the determination of whether to disqualify a district attorney.

### D. Application to This Case

■ The trial court stated that it based its decision to disqualify the district attorney on the "special circumstances" prong, but did not explain how Richardson's involvement made it unlikely that Loper would receive a fair trial. Instead, even though it found probable cause for the charges, the trial court found that the evidence raised concerns because of the suspicious manner in which the charges were brought and agreed with defense counsel's contention that the evidence "[left] a bad smell." This "bad smell," however, concerns the potential impropriety of the district attorney, which is no longer relevant under section 20–1–107, rather than whether Loper would be unlikely to receive a fair trial.

As such, this case does not present any special circumstances that would render it unlikely that Loper would receive a fair trial. It does not implicate the confidentiality and conflict of interest issues that we found to be special circumstances warranting disqualification in *Chavez,* but instead deals with the involvement and influence of an interested probation officer—someone employed by the judicial department and not supervised by the district attorney. Although Richardson may have influenced the district attorney in bringing the charges against Loper, we assume that a district attorney acted in accordance with the law. *See Sandoval v. Farish,* 675 P.2d 300, 303 (Colo.1984). Even if Richardson did influence the district attorney, this influence does not jeopardize the likelihood that Loper will receive a fair trial.

■ Finally, disqualifying the district attorney is a drastic remedy that should only occur in narrow circumstances. *See Perez,* 201 P.3d at 1233 (citing *People v. Harlan,* 54 P.3d 871, 877 (Colo.2002)). In *C.V.,* we cautioned that defendants should not have "the

---

7. Although we decided *C.V.* under the "appearance of impropriety" standard, which has since been rejected, *C.V.* is still a valid example of what

is not sufficient to constitute "special circumstances."

**548**

unfettered option of disqualifying a prosecutor whenever a district attorney [has] knowledge of any fact surrounding a case." 64 P.3d at 276–77. Allowing disqualification in this case would create a similar problem, giving defendants the option to disqualify the district attorney whenever the victim is related to anyone that worked closely with the district attorney and would unnecessarily increase the need for trial courts to appoint special prosecutors.

### III. Conclusion

We hold that special circumstances did not exist that rendered it unlikely that Loper would receive a fair trial. Even if Richardson did have influence over the district attorney, there was no evidence that Loper would not receive a fair trial. Therefore, we find that the trial court abused its discretion and reverse its decision to disqualify the district attorney.