2017 CO 112

**The PEOPLE of the State of Colorado, Plaintiff-Appellant**

v.

**Joshua EPPS, Defendant-Appellee**

**Supreme Court Case No. 17SA152**

Supreme Court of Colorado.

December 18, 2017

Attorneys for Plaintiff-Appellant: Bruce Brown, District Attorney, Fifth Judicial District, Bryan Garrett, Deputy District Attorney, Georgetown, Colorado.

Attorneys for Defendant-Appellee: The Law Offices of Sanam Mehrnia, P.C., Sanam Mehrnia, Frisco, Colorado.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 The District Attorney for the Fifth Judicial District brought Joshua Epps to trial on charges related to allegations that Epps had threatened his probation officer. Shortly after a mistrial was declared, the alleged victim's husband (who was also a witness called by the prosecution at trial) had an antagonistic encounter with Epps in the courtroom. The deputy district attorney prosecuting the case witnessed the encounter and later spoke to the alleged victim's husband about it. Epps subsequently endorsed the deputy district attorney as a witness both to the encounter and to the statements made to him by the alleged victim's husband. Epps then sought to disqualify the deputy district attorney on the basis of his expected testimony, which was to be offered to impeach the husband.

¶2 The People opposed both the effort to call the deputy district attorney as a witness and the motion to disqualify. The district court, however, ruled that Epps would be allowed to call the deputy district attorney to testify at trial and disqualified the entire district attorney's office, based, in large part, on the People's alleged failure to object to that proposed action. The People then filed this interlocutory appeal.[1]

¶3 We now reverse the district court's order. In disqualifying the district attorney's office, the district court relied on its erroneous understanding that the People had not objected to the disqualification. Moreover, we cannot say that the deputy district attorney's proffered testimony would be of sufficient consequence to deny Epps a fair trial. Accordingly, we conclude that the district court abused its discretion in disqualifying the dis-

---

1. In their Notice of Interlocutory Appeal, the People raised the following issue:

Whether the district court erred in disqualifying the district attorney and appointing a special prosecutor when the district attorney would testify to a collateral issue witnessed by other people.

trict attorney's office and thus reverse the court's order and remand this case to that court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4 The People charged Epps with attempting to influence a public servant, stalking, and harassment, in connection with threatening Facebook messages that Epps had allegedly sent his probation officer. The case proceeded to a two-day jury trial. At trial, the People called four witnesses, including the probation officer's husband, William Washburn, who testified to the emotional distress that his wife had suffered as a result of the threatening messages. The case went to the jury, but the jury deadlocked and the judge declared a mistrial.

¶5 Immediately after the court's mistrial ruling, as a courtroom deputy prepared to escort Epps away, the deputy observed Washburn lock eyes with Epps. After a few seconds, Washburn started to move toward Epps. At that point, the deputy, in a loud and forceful manner, instructed Washburn to sit down and then said to Washburn that he was not helping matters and that the deputy "had room in [his] jail for [Washburn] that night." Washburn went back and sat down. The deputy did not hear Epps say anything during this encounter, which was captured on the courtroom's surveillance video.

¶6 The deputy district attorney prosecuting the case was present in the courtroom at the time of the incident and later spoke to Washburn about his encounter with Epps. In that conversation, Washburn told the deputy district attorney that Epps had lunged at him, threatened to kill his child, and winked. The surveillance video of the encounter and the courtroom deputy's observations thereof, however, tended to disprove Washburn's account.

¶7 Epps subsequently endorsed the deputy district attorney as a witness, with the intention of calling him at the retrial to impeach Washburn. In addition, Epps served the deputy district attorney with a subpoena for trial testimony and sought to disqualify him as the prosecutor, based on the fact that he would be a witness. The People moved to quash the subpoena and opposed the motion to disqualify.

¶8 The district court then convened a pretrial conference to consider the foregoing motions. At this conference, the court viewed the surveillance video and heard testimony from the courtroom deputy and the deputy district attorney about their perceptions of the incident, along with testimony from the deputy district attorney about his subsequent conversation with Washburn. Notably, upon being called as a witness, the deputy district attorney objected, asserting, "I can't be an attorney on a case and I can't be a witness on a case at the same time." The court, however, ordered the deputy district attorney to testify. At this point, the attorney clarified that he was "not conceding the special prosecutor motion" by testifying. The attorney also offered to stipulate to Washburn's statements, in order to avoid the need for a special prosecutor, but Epps refused the offered stipulation.

¶9 After hearing the evidence, the court, ruling from the bench, made detailed findings of fact and conclusions of law. As pertinent here, the court found that Washburn's proffered testimony about the encounter itself would be cumulative. The court further found that Epps had not lunged at Washburn or threatened to kill his child during the encounter, thereby rejecting the account that Washburn had conveyed to the deputy district attorney. In light of this finding, the court ruled that it would allow Epps to call the deputy district attorney at trial in order to impeach Washburn.

¶10 Having so ruled, the court expressed its inclination to disqualify the deputy district attorney. A discussion then ensued as to whether the disqualification should apply to the deputy district attorney alone or to the entire district attorney's office. The deputy district attorney explained that the pertinent statute, section 20-1-107(4), C.R.S. (2017), requires the court, in the event of a district attorney's disqualification, to "appoint a special prosecutor from among the full-time district attorneys, assistant district attorneys, or deputy district attorneys who serve in judicial districts other than where the appointment is made." Despite pointing this out to the court, the attorney reiterated that he "maintain[ed] his objection to [the special prosecutor motion]." The court, however, de-

cided to appoint a special prosecutor and indicated that it would enter a written order memorializing that day's proceedings.

¶11 Three days later, the court entered its written order. As pertinent here, the court found that the deputy district attorney had never objected to the motion to disqualify, construed this lack of objection as "the substantial equivalent of a request by the district attorney to be disqualified rather than being ordered to appear as a witness at trial," and thus granted Epps's motion to disqualify the district attorney's office.

¶12 The People then filed a Notice of Interlocutory Appeal, purportedly pursuant to sections 16-12-102(2), 20-1-107(3), C.R.S. (2017), and C.A.R. 4.1, asking this court to review the district court's order.[2]

## II. Analysis

¶13 We first address the standard of review governing orders disqualifying a district attorney or district attorney's office. We then discuss the three exclusive conditions on which disqualification may be ordered pursuant to section 20-1-107(2).

### A. Standard of Review

¶14 District courts have broad discretion in determining whether to disqualify a district attorney from prosecuting a particular case. People v. Palomo, 31 P.3d 879, 882 (Colo. 2001). This court will not disturb a district court's decision to disqualify a district attorney's office unless that court's decision was manifestly arbitrary, unreasonable, or unfair. Kendrick, ¶ 36, 396 P.3d at 1130. This standard is satisfied when, among other things, the court misapplies the law. Id.

### B. Disqualification of the District Attorney

¶15 Under section 20-1-107(2), a district court may only disqualify a district attorney in a particular case (1) "at the request of the district attorney," (2) "upon a showing

that the district attorney has a personal or financial interest" in the prosecution, or (3) if the court "finds special circumstances that would render it unlikely that the defendant would receive a fair trial." Accord Kendrick, ¶ 37, 396 P.3d at 1130.

¶16 Here, the district court did not proceed past the first prong of section 20-1-107(2) (i.e., "at the request of the district attorney") because it concluded that the deputy district attorney "did not object to the court granting the motion to disqualify." The court construed this as the "substantial equivalent of a request by the district attorney to be disqualified rather than being ordered to appear as a witness at trial." On this basis, the court disqualified the district attorney's office.

¶17 We conclude that the record does not support the district court's conclusion on this prong of section 20-1-107(2). Contrary to the district court's finding, the deputy district attorney objected to disqualification at least three times. First, he objected when he filed the People's written response to Epps's motion to disqualify the district attorney's office and appoint a special prosecutor. Second, before he testified, the deputy district attorney made clear that he was "not conceding the special prosecutor motion." And third, after testifying, and after the court had expressed its inclination to disqualify him, the deputy district attorney again stated that he was "still maintaining [his] objection to [the appointment of a special prosecutor]." In our view, these statements unmistakably evinced the district attorney's objection to the motion to disqualify. See Rael v. People, 2017 CO 67, ¶ 17, 395 P.3d 772, 775 (noting that parties need not use "talismanic language" to preserve an argument for appeal). Accordingly, we do not agree that these statements could be construed as requests by the deputy district attorney for disqualification.[3]

¶18 Nor can the district attorney's disqualification be justified under the second

---

2. We note that C.A.R. 4.1 does not authorize an interlocutory appeal here. That rule is limited to appeals of district court rulings under Crim. P. 41(e) and (g) and Crim. P. 41.1(i). Nonetheless, the interlocutory appeal is properly before us under section 16-12-102(2), C.R.S. (2017), which allows the prosecution to file an interlocutory appeal from a ruling on a motion to disqualify a

district attorney pursuant to section 20-1-107. People v. Kendrick, 2017 CO 82, ¶¶ 32–33, 396 P.3d 1124, 1130.

3. Nor would we construe the deputy district attorney's statements concerning section 20-1-107(4) as a request for disqualification. Once the district court had made its decision to disqualify

prong of section 20-1-107(2) (i.e., "upon a showing that the district attorney has a personal or financial interest" in the prosecution). Our inquiry into this prong has focused on "whether the members of the district attorney's office would stand to receive personal benefit or detriment from the outcome of a case." Palomo, 31 P.3d at 882. Epps does not contend that the deputy district attorney or the district attorney's office as a whole would receive either benefit or detriment at the trial's conclusion, regardless of the outcome, nor would the record support such a contention. To the contrary, the record shows that the deputy district attorney was "simply performing his professional duty to execute the laws of the State of Colorado." People in Interest of N.R., 139 P.3d 671, 677 (Colo. 2006). Accordingly, the second prong of section 20-1-107(2) does not warrant the district attorney's disqualification.

 ¶19 This leaves the third and final prong of section 20-1-107(2), which allows disqualification if the court "finds special circumstances that would render it unlikely that the defendant would receive a fair trial." To justify disqualification on these grounds, the "special circumstances" must be "extreme." People v. Loper, 241 P.3d 543, 546 (Colo. 2010); see also People v. Chavez, 139 P.3d 649, 654 (Colo. 2006) (perceiving extreme circumstances when an assistant district attorney had a previous attorney-client relationship with the defendant and that relationship was substantially related to the prosecution then before the court). Thus, in the circumstances presented here, "the determination of whether a district attorney should be disqualified in a criminal case when he or a member of his staff appears as a witness depends upon whether the testimony is of sufficient consequence to prevent a fair trial." People v. Garcia, 698 P.2d 801, 805 (Colo. 1985); accord People v. C.V., 64 P.3d 272, 276 (Colo. 2003); see also Riboni v. Dist. Court, 196 Colo. 272, 586 P.2d 9, 11 (1978) ("The mere fact that the defense intends to call the prosecutor as a witness does not, without more, dispose of the [disqualification] question.").

¶20 We have deemed proposed testimony to be of sufficient consequence when, for example, two attorneys from the same district attorney's office had been endorsed as witnesses, one by the prosecution and the other by the defense, to testify to issues bearing directly on the accused's guilt or innocence. Pease v. Dist. Court, 708 P.2d 800, 802–03 (Colo. 1985). Specifically, in Pease, the prosecution's attorney-witness would be called to testify to incriminating statements that the accused had made to him, and the defense's attorney-witness would testify to exculpatory statements made by the accused and to "abuses" allegedly committed by the prosecutor. Id. at 802. Because the attorneys' testimony would relate to contested issues and be "both relevant and material to the issue of guilt," we deemed it to be of sufficient consequence to prevent a fair trial and consequently made absolute the district court's order disqualifying the district attorney's office. Id. at 803.

¶21 Likewise, in Garcia, 698 P.2d at 806, we upheld an order disqualifying a district attorney's office when the prosecution planned to call a deputy district attorney to testify at trial to prove an element of the charged offense. In that case, the People charged Garcia with violating the conditions of her bond after she had failed to appear for her sentencing hearing following her conviction on a separate charge. Id. at 804. The prosecution endorsed the deputy district attorney as a witness to testify that Garcia had been present at the proceeding when she was ordered to appear for the subsequent hearing, that she "appeared to have no difficulty hearing or understanding the order," and that she did not, in fact, appear at the hearing. Id. at 806. Because this testimony "was relevant and necessary to prove the culpable mental state of 'knowingly,' which was an element of the offense charged" (i.e., that Garcia had "knowingly" failed to appear), we held that the disqualification of the district attorney's office was proper. Id.

¶22 Here, in contrast, Epps seeks to use the deputy district attorney's testimony solely to impeach Washburn. Specifically, Epps

---

the deputy district attorney, the deputy district attorney offered his interpretation of the governing statute. We perceive nothing in his statements that could be construed as a concession to

the disqualification motion, particularly given his contemporaneous statements reiterating his objection.

apparently intends to introduce the surveillance footage of the encounter at issue and then to call the deputy district attorney to testify to Washburn's statements about the incident, which Epps contends the surveillance video and the courtroom deputy's testimony proved false. In this way, Epps plans to attack Washburn's credibility, in the hope of discrediting Washburn's testimony concerning the emotional distress that his wife suffered after receiving the threatening Facebook messages. (Emotional distress is one of the necessary elements of stalking under section 18-3-602(1)(c), C.R.S. (2017).)

¶23 For several reasons, we conclude that the foregoing proposed testimony would not be of sufficient consequence to deny Epps a fair trial were the deputy district attorney who is prosecuting the case to be required to testify, and therefore, the prospect of such testimony does not constitute "special circumstances" under the third prong of section 20-1-107(2).

¶24 First, unlike in Garcia, the deputy district attorney's testimony would not be offered to prove or disprove an element of any charged offense. Nor would such testimony be directly relevant to the issue of guilt, as were the exculpatory and incriminating statements at issue in Pease. Instead, Epps proffers the deputy district attorney's testimony solely to attack Washburn's credibility; the testimony itself has "no probative value on the issue of guilt." Pease, 708 P.2d at 803.

¶25 Second, the People concede that Washburn made the statements that Epps seeks to establish through the deputy district attorney's testimony, rendering the facts that Epps seeks to admit through the deputy district attorney's testimony uncontested by the parties. As a result, it is not at all clear that disqualification of the district attorney is warranted or appropriate. See Colo. RPC 3.7(a)(1) (providing that a lawyer shall not act as an advocate at a trial in which he or she is likely to be a necessary witness, unless the testimony relates to an uncontested issue).

¶26 In this regard, our decision in Riboni is instructive. In Riboni, 586 P.2d at 10, a

vehicular homicide case, a deputy district attorney had interviewed a witness who said that he had been driving the vehicle at the time of the accident. During a later interview with a state highway patrolman, however, the same witness denied having been the driver. Id. at 10–11. Riboni then sought to call the deputy district attorney to impeach the witness's later denial that he had been the driver and moved to disqualify the district attorney and appoint a special prosecutor. Id. We concluded that Riboni had not carried his burden of establishing either that he would probably need the deputy district attorney's testimony to impeach the witness or that if the deputy district attorney were to testify while serving as the prosecutor in the case, Riboni would be denied a fair trial. Id. at 12. In so ruling, we observed that "the People [had] conceded that [the witness] had made the contradictory statements." Id. In light of this concession, we saw no reason to assume that the People would not likewise concede the point at trial. Id. And if this occurred, then there would be no need for the deputy district attorney's testimony. Id. Even absent a concession, however, we noted that others would have been available to impeach the witness's statement that he had not been the driver. Id.

¶27 Here, the People have offered to stipulate that Washburn made the statements to the deputy district attorney about the encounter at issue. As in Riboni, therefore, the deputy district attorney's testimony may not be necessary. And in any event, on the facts presented here, we cannot say that disqualification would be required even were the deputy district attorney to testify to this uncontested matter. See Colo. RPC 3.7(a)(1).

¶28 Finally, contrary to Epps's assertion, the deputy district attorney was not necessarily the only witness to Washburn's statements. Washburn himself was a witness to those statements, and as was the case with the pertinent witness in Riboni, the record does not allow us to conclude that Washburn would deny making the statements or otherwise refuse to testify about them.[4]

4. We need not address what would occur were Washburn to deny making the statements or otherwise refuse to testify about them. For purposes

here, it is sufficient to note that (1) the People have offered to stipulate that Washburn made the statements; (2) over his objection, the deputy

¶29 For these reasons, we conclude that none of the three statutory conditions for disqualification of a district attorney was established here. Accordingly, we hold that the district court abused its discretion in disqualifying the district attorney's office.

### III. Conclusion

¶30 For these reasons, we reverse the district court's order disqualifying the district attorney's office and ordering the appointment of a special prosecutor, and we remand this case for further proceedings consistent with this opinion.

---

district attorney testified to these statements at a pretrial conference, and a transcript of that testimony is in the record; and (3) in its order granting the motion to disqualify the district attorney, the district court found that Washburn made the statements.