Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 7, 2020

**2020 CO 85**

**No. 20SA265, *People v. Kent*—Motion to Disqualify District Attorney—§ 20-1-107(2), C.R.S. (2020)—"Special Circumstances."**

In this interlocutory appeal, the elected district attorney in Colorado's Fifth Judicial District contends that the district court abused its discretion in granting the defense's motion to disqualify his office from the case. As relevant here, the defendant argued that he is unlikely to receive a fair trial based on the existence of special circumstances. The district court correctly determined that each identified circumstance, "in and of itself," did not warrant disqualification. But it nevertheless held that those same circumstances, "viewed as a totality," sufficed for disqualification. It therefore granted the motion to disqualify.

The supreme court concludes that the district court abused its discretion by misapplying the law. The district court failed to adequately explain how the circumstances in question, though individually inadequate to warrant disqualification, justified the extraordinary relief requested when considered

together. The supreme court further concludes that the record reflects that the defendant plainly failed to satisfy his burden of establishing that he would be unlikely to receive a fair trial if this district attorney's office continues prosecuting his case. Because the circumstances articulated by the district court, even considered cumulatively, are not so extreme as to justify the drastic remedy of disqualification, which is reserved for narrow circumstances, the supreme court reverses the disqualification order and remands for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 85

**Supreme Court Case No. 20SA265**
*Interlocutory Appeal from the District Court*
Lake County District Court Case No. 19CR75
Honorable Catherine J. Cheroutes, Judge

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Shannon L. Kent.

**Order Reversed**
*en banc*

December 7, 2020

**Attorneys for Plaintiff-Appellant:**
Bruce I. Brown, District Attorney, Fifth Judicial District
Stephen F. Potts, Deputy District Attorney
Lauren Crisera, Deputy District Attorney
    *Leadville, Colorado*

**Attorneys for Defendant-Appellee:**
John Scott, Attorney at Law, LLC
John G. Scott
    *Leadville, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

**JUSTICE HOOD** dissents, and **JUSTICE GABRIEL** and **JUSTICE HART** join in the dissent.

¶1    In Colorado's Fifth Judicial District, the elected district attorney, Bruce I. Brown, and the elected coroner of Lake County, Shannon L. Kent, mix like oil and water. They are adversaries in this case: Brown is prosecuting Kent for perjury, a class 4 felony, and second degree official misconduct, a class 1 petty offense. After the case had been pending for approximately nine months, Kent filed a motion to disqualify Brown's office, arguing that he is unlikely to receive a fair trial based on Brown's personal interest in the case and the existence of special circumstances. Following briefing and an evidentiary hearing, the district court granted the motion.

¶2    The court ruled that there were special circumstances present that rendered it unlikely that Kent would receive a fair trial. Importantly, the court correctly determined that each identified circumstance, "in and of itself," did not warrant disqualification. But it nevertheless held that those same circumstances, "viewed as a totality," sufficed for the exceptional remedy sought by Kent.

¶3    We conclude that Brown's office should not have been disqualified. In our view, the Aristotelian concept to which the court hitched its wagon—"the whole is greater than the sum of its parts"—is unpersuasive in this case. The court failed to adequately explain how the circumstances in question, though individually inadequate to warrant disqualification, justified the extraordinary relief requested when considered together. And the record before us reflects that Kent plainly

3

failed to satisfy his burden of establishing that he would be unlikely to receive a fair trial if Brown's office continues prosecuting this case.

¶4 We recognize that the court was concerned that "this prosecution is significantly different than most" and that "[t]here is something personal about the case" for Brown. But even taking those concerns at face value, the court's approach strikes us as akin to the "bad smell" standard we rejected a decade ago in *People v. Loper*, 241 P.3d 543, 547 (Colo. 2010), after the legislature eliminated the appearance of impropriety as a ground for the disqualification of a prosecuting office.

¶5 Because the circumstances articulated by the court, even considered cumulatively, are not so "extreme" as to justify the "drastic" remedy of disqualification, which is reserved for "narrow circumstances," *id.* at 546–47, we reverse the disqualification order and remand for further proceedings consistent with this opinion. Even assuming the circumstances at issue "may cast doubt" upon Brown's "motives and strategies" in this case, "they do not play a part in whether [Kent] will receive a fair trial." *Id.* at 547.

## I. Facts and Procedural History

¶6 The genesis of the animus between Brown and Kent can be traced back to a complaint filed by the Lake County Sheriff regarding Kent's practices as a coroner. According to that complaint, Kent asked his wife, Staci Kent, to respond to a

4

coroner call, and she showed up to the scene without a body bag. After the Sheriff submitted her complaint to the Colorado Coroner's Association, she forwarded a copy of it to Brown, who assigned the matter to an investigator in his office and later presented it to the grand jury. The grand jury, in turn, returned a true bill and indicted Kent on a charge of second degree official misconduct, a class 1 petty offense. The charge alleges that Kent allowed his wife to act in the official capacity of deputy coroner before she was formally deputized.

¶7 On the day the grand jury returned its true bill, Kent confronted Brown in the hallway of the courthouse and told him that he should "pull his head out of his ass." Needless to say, this further soured their relationship. Brown was upset by the remark and told Kent's attorney that he felt threatened.

¶8 Thereafter, while attempting to negotiate a plea bargain, Brown told Kent's attorney that Kent should plead guilty to the petty offense charge and resign as coroner because there was a possibility of a felony count being added. This apparently angered Kent, who visited the District Attorney's Office in Leadville (located in the Fifth Judicial District). There, he had a contentious interaction with a legal administrative assistant during which he made threatening statements

directed at Brown ("Leadville incident").[1]  Upon receipt of an email from that assistant conveying the threatening statements, Brown contacted the Colorado Bureau of Investigation ("CBI") and requested an investigation into the Leadville incident because he believed that Kent was unstable and may have committed a crime.  An investigation was conducted; however, after review by a special prosecutor from a different judicial district, no charges were filed.

¶9    At some point after CBI commenced its investigation, Brown spoke with Kent's attorney again.  Brown reiterated that if Kent didn't plead guilty to the petty offense charge, "things would get really bad."  He added that individuals who had threatened him in the past had been convicted of felonies.

¶10    The grand jury subsequently reconvened and returned a second true bill against Kent, this time for perjury, a class 4 felony.  The perjury charge is rooted in the sworn testimony provided by Kent during the original grand jury proceedings.  He testified then that his wife had been a deputy coroner for

---

[1] Kent told the assistant that Brown had promised to add a felony count if Kent didn't plead guilty to the petty offense charge, asked whether Brown understood who he was, said that Brown had "fucked with the wrong person," noted that he knew people in high places, indicated that Brown had "better watch out," and shared that Brown was going "to fuck himself in the ass" if he didn't stop.  Further, Kent inquired whether the assistant was aware that Brown had been involved in an accident in a state car and had left the scene, had been asked to leave a polling place, had refused to investigate a voter fraud case, had declined to investigate a county employee dealing drugs, and was rumored to be having an affair.

approximately two years (since 2017) and had not acted in an official capacity before 2017. But the grand jury was presented with a death certificate signed by Staci Kent in 2016. At Kent's request, the district court has since reviewed the grand jury transcripts and found that the grand jury's finding of probable cause with respect to the perjury charge is supported by the record.

¶11 Brown, his investigator (Jason Boston), and the deputy district attorney who presented evidence to the grand jury were all witnesses to the statements that form the basis of the perjury charge. The prosecution has endorsed Boston as a witness.

¶12 Following the filing of the superseding indictment, Brown lodged a complaint with the Department of Regulatory Affairs ("DORA") against Kent. In his complaint, Brown asked DORA to share with him any information it may uncover during its investigation of Kent. Kent and his attorney were not made aware of this complaint.

¶13 Earlier this year, Kent served two subpoenas duces tecum—one on the Sheriff, seeking copies of her written communications with Brown about Kent; the other on the special prosecutor assigned to the Leadville incident, seeking recordings of witness interviews in connection with that incident. Brown's office moved to quash both subpoenas, but the court denied that motion. The court found that the subpoenas duces tecum were appropriate and that, in any event,

7

the information Kent was after "should have been disclosed" by Brown's office pursuant to Crim. P. 16 without any prompting.

¶14 After the court resolved the dispute over the subpoenas duces tecum and found that Brown's office had violated Crim. P. 16, Kent filed a motion to disqualify Brown's office from prosecuting this case. Following briefing, the motion was considered at an evidentiary hearing. Less than a week later, the court issued a written order disqualifying Brown's office and appointing a special prosecutor. The People sought to have the court reconsider its ruling, but to no avail. This interlocutory appeal by the People followed.

## II. Jurisdiction

¶15 Before launching our analytical expedition, we make a quick pit stop to check our jurisdictional gauge. Without jurisdiction, we lack power to proceed.

¶16 We conclude that this interlocutory appeal is properly before us. *See* § 16-12-102(2), C.R.S. (2020). Section 16-12-102(2) allows the People to file an interlocutory appeal from a ruling on a motion to disqualify pursuant to section 20-1-107, C.R.S. (2020). *People v. Kendrick*, 2017 CO 82, ¶ 33, 396 P.3d 1124, 1130. Therefore, we have jurisdiction to resolve the People's appeal, and we now proceed to review the district court's decision to disqualify Brown's office.

## III. Analysis

¶17    We kick off our analysis by examining section 20-1-107(2) and our jurisprudence on motions to disqualify prosecuting offices.  Next, mindful of the governing standard of review, we carefully inspect the district court's order and test it against the law.  Because we conclude that the district court abused its discretion by misapplying the law, we reverse.

### A.  Section 20-1-107(2) and Relevant Case Law

¶18    Our General Assembly has declared that it is "necessary to protect the independence of persons duly elected to the office of district attorney." § 20-1-107(1).  To that end, section 20-1-107(2) provides that a district attorney "may only be disqualified" from a case in limited situations: (1) "at the request of the district attorney"; (2) "upon a showing that the district attorney has a personal or financial interest" in the case; or (3) if the court finds "special circumstances that would render it unlikely that the defendant would receive a fair trial."  These are the three exclusive bases for disqualifying a district attorney.  *Loper*, 241 P.3d at 546.  The third category, "special circumstances," is the only one in play here.[2]  We confine our discussion accordingly.

---

[2] The motion to disqualify included an allegation that Brown has a personal interest in this prosecution.  But the court did not rely on the personal interest prong of the disqualification statute.

¶19    The key inquiry with respect to the "special circumstances" prong is whether it is likely that the defendant would receive a fair trial. *Id.* The party moving to disqualify the district attorney based on special circumstances "bears the burden of showing that it is unlikely that [he] will receive a fair trial." *Id.* To meet this burden, the moving party must point to "actual facts and evidence in the record supporting the contention." *Id.* "[M]ere hypothetical information" does not suffice. *Id.*

¶20    Not surprisingly, we have not deemed it fit to identify the circumstances that qualify as "special circumstances" under section 20-1-107(2). *Loper*, 241 P.3d at 546. Doing so seems as foolish as attempting to nail jello to the wall because of the difficulty of anticipating the possible circumstances that may render it unlikely that a defendant would receive a fair trial. But that's not to say that our case law sheds no light on the matter. Our past application of this statutory prong teaches that the special circumstances "must be extreme to justify disqualifying the district attorney." *Id.* We have found that even potential wrongdoing by a prosecutor is not so extreme as to require her office's disqualification. *People v. Jimenez*, 217 P.3d 841, 858 (Colo. App. 2008). Thus, though we have reviewed plenty of section 20-1-107(2) orders, in the last couple of decades "we have identified only one scenario in which the circumstances were sufficiently extreme so as to justify disqualifying a district attorney." *Kendrick*, ¶ 43, 396 P.3d at 1131 (referring to

*People v. Chavez*, 139 P.3d 649, 654 (Colo. 2006), where the district attorney had previously represented the defendant in a substantially related matter and was privy to confidential communications regarding the pending case).

¶21 Of particular relevance here, in *People in Interest of N.R.*, 139 P.3d 671, 675 (Colo. 2006), we explained that in 2002 the legislature did away with the "appearance of impropriety" standard as a basis for disqualifying a district attorney.[3] There, we detected no special circumstances warranting disqualification, even though the district attorney had received substantial support from the victim's family for his political campaign and had thereafter reversed his predecessor's decision not to prosecute the case. *Id.* at 678. That the district attorney may have been indebted to the victim's family was of no consequence to our decision. *Id.*

¶22 In line with *People in Interest of N.R.*, we have consistently refused to find special circumstances warranting disqualifications where "the facts raise[d] concerns of impropriety" but fell short of demonstrating that the defendant was

---

[3] Before 2002, the disqualification statute stated that a district attorney could be disqualified if she was "interested or ha[d] been employed as counsel in any case which it [was her] duty to prosecute or defend." § 20-1-107(4), C.R.S. (2001). We had construed this language in the old version of section 20-1-107 as requiring disqualification whenever there was an "appearance of impropriety." *See, e.g.*, *People v. C.V.*, 64 P.3d 272, 274 (Colo. 2003).

unlikely to receive a fair trial. *Loper*, 241 P.3d at 547. Hence, we declined to find special circumstances warranting disqualification where a district attorney had previously represented the victim in another case, *People v. Lincoln*, 161 P.3d 1274, 1281 (Colo. 2007), and where the district attorney was accused of stealing relevant medical records, *Dunlap v. People*, 173 P.3d 1054, 1093–95 (Colo. 2007). In reviewing *People in Interest of N.R.* and its offspring in *Loper*, we emphasized that facts that give rise to an appearance of impropriety are no longer relevant under section 20-1-107(2). *Loper*, 241 P.3d at 547.

¶23 Significantly, we recognized in *Loper* that the circumstances involved in cases like *People in Interest of N.R.*, *Lincoln*, and *Dunlap* may well "cast doubt upon a district attorney's motives and strategies." *Id.* But we nevertheless defended the determination in each case that, notwithstanding the potential appearance of impropriety, the circumstances present did not warrant disqualification. *Id.* And we did so with good reason—such circumstances had no bearing on whether the defendant would receive a fair trial. *Id.*

¶24 Guided largely by the signposts erected in *People in Interest of N.R.*, *Lincoln*, and *Dunlap*, in *Loper*, we reversed the district court's order disqualifying the prosecuting office after we determined that there were no special circumstances that made it unlikely that Loper would receive a fair trial. *Id.* at 544. There, Loper was accused of sexually assaulting his girlfriend, whose mother was a probation

12

officer in the Fourth Judicial District. *Id.* We acknowledged that the probation officer had been involved in the incident, was endorsed as a witness in the case, provided almost all of the relevant testimony at the preliminary hearing, and "may have influenced the district attorney in bringing the charges against Loper." *Id.* at 544–45, 547. But we observed that the district court had found probable cause for the charges and that there is a presumption "that a district attorney act[s] in accordance with the law." *Id.* at 547.

¶25 We held in *Loper* that the motion to disqualify did not present the type of rare situation warranting disqualification. *Id.* at 548. In so doing, we noted that the case certainly did "not implicate the confidentiality and conflict of interest issues that we found to be special circumstances warranting disqualification in *Chavez*." *Id.* at 547. We concluded that, even if the probation officer had influenced the filing of charges by the district attorney, there was no basis to rule that the likelihood that the defendant would receive a fair trial had been jeopardized. *Id.* The fact that the circumstances may have left "a bad smell," we continued, was of no moment for purposes of the section 20-1-107(2) motion. *Id.*

¶26 More recently, in *Kendrick*, we echoed our disavowal of "appearance of impropriety" as a valid basis for disqualification under the current version of section 20-1-107. ¶ 47, 396 P.3d at 1132 (citation omitted). The disqualification order under challenge in *Kendrick* was premised on the district court's "lingering

concern that . . . there clearly [was] *at least an appearance* that the defendant would not receive a fair trial." *Id.* at ¶ 46, 396 P.3d at 1132. We reversed, reasoning that, "[i]nsofar as the district court [had] based its ruling on a perceived 'appearance' of impropriety," it had erred. *Id.* at ¶ 47, 396 P.3d at 1132; *see also People v. Perez*, 201 P.3d 1220, 1232 (Colo. 2009) (stating that it was error to disqualify the district attorney's office based on the appearance of impropriety created by the fact that one of its prosecutors had previously represented the defendant). In the process, we spotlighted the principle that the "special circumstances" criterion in section 20-1-107(2) is reserved for "extreme" circumstances that render it unlikely that the defendant would receive a fair trial. *Kendrick*, ¶ 48, 396 P.3d at 1132 (quoting *Loper*, 241 P.3d at 546).

¶27 It is against this backdrop that we must scrutinize the district court's disqualification order. We do so next.

## B. The District Court Misapplied the Law

¶28 We review the district court's order disqualifying Brown's office for an abuse of discretion. *People v. Ehrnstein*, 2018 CO 40, ¶ 13, 417 P.3d 813, 816. "A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair." *Id.* If a court grants a motion to disqualify a prosecuting office based on a misapplication of the law, it abuses its discretion. *People v. Epps*, 2017 CO 112, ¶ 14, 406 P.3d 860, 864.

14

¶29 As a preliminary matter, neither party challenges the district court's finding that none of the identified circumstances, alone, supports the disqualification of Brown's office. And there is no basis in the record or the law for us to sua sponte call that finding into question.

¶30 In its comprehensive order, the court reeled off a number of circumstances, but it appeared to view three of them as "problematic" or "potentially problematic." We focus on the three circumstances that the court was most troubled by: (1) Boston's anticipated testimony at trial about Kent's alleged perjury during the grand jury proceedings; (2) the two discovery violations by Brown's office; and (3) the DORA complaint filed by Brown. We address each circumstance in turn.

¶31 First, the court was worried because Boston, an employee of Brown's office, may be called as a witness at trial. As the court acknowledged, though, there is a transcript of Kent's sworn testimony before the grand jury. Consequently, any testimony offered by Boston at trial to lay a foundation for the admission of that transcript or to corroborate the contents of that transcript would be "cumulative and relevant only to an uncontested matter." *People v. Dist. Ct.*, 560 P.2d 463, 465 (Colo. 1977) (involving a prosecutor's anticipated testimony related to a charge of perjury). Such testimony "is not of sufficient consequence" to render it unlikely

that Kent would receive a fair trial. *Id.* Accordingly, Boston's likely testimony is not a special circumstance that qualifies for disqualification.[4]

¶32 Second, the court was "gravely concern[ed]" about two discovery violations by Brown's office.[5] The court found that the prosecution had violated Crim. P. 16 by failing to disclose the information sought by Kent's subpoenas duces tecum, both of which the prosecution opposed. But our "court has never found a discovery violation to be the type of special circumstance warranting disqualification." *Perez*, 201 P.3d at 1233. When a discovery violation occurs, the trial court must impose *the least restrictive* sanction that preserves the truth-finding

---

[4] Boston's proposed testimony stands in stark contrast to the proffered testimony we found of sufficient consequence and troublesome in *Pease v. District Court*, 708 P.2d 800, 802–03 (Colo. 1985), and *People v. Garcia*, 698 P.2d 801, 805 (Colo. 1985). In *Pease*, two employees of the prosecuting office were endorsed as witnesses (one by each party), and their testimony was undoubtedly necessary and admissible—it was directly relevant to contested issues, including the issue of guilt. 708 P.2d at 803. One witness was expected to testify about incriminating statements made to him by the defendant, while the other was planning to testify about exculpatory statements made to him by the defendant and abuses committed by the prosecution. *Id.* at 802. Similarly, in *Garcia*, a deputy district attorney planned to offer the only testimony regarding the culpable mental state element of the offense charged. 698 P.2d at 806. Again, that testimony was directly relevant to contested issues, including the issue of guilt, and was, thus, clearly necessary and admissible. *Id.*

[5] The court raised the discovery issues sua sponte. This was improper. A defendant who moves to disqualify pursuant to section 20-1-107(2) bears the burden of showing actual facts and evidence in the record supporting his contention that there are extreme circumstances present that render it unlikely that he would receive a fair trial. *Loper*, 241 P.3d at 546.

16

process, restores a level playing field, and deters future misconduct by the prosecution. *People v. Dist. Ct.*, 793 P.2d 163, 168 (Colo. 1990). "Disqualification of the entire DA's Office is a drastic remedy and certainly not the least restrictive sanction available for a discovery violation." *Perez*, 201 P.3d at 1233. Therefore, the prosecution's discovery violations are not special circumstances that warrant disqualification.

¶33 Finally, the court referenced the DORA complaint. But it discerned nothing inappropriate about it. Neither do we. And filing the DORA complaint is surely not a special circumstance warranting disqualification.

¶34 Despite correctly concluding that none of these circumstances was sufficiently extreme to warrant disqualification, the district court ruled that the same circumstances, viewed in totality, warranted disqualification. But, like the district court in *Loper*, the district court here failed to adequately explain how the circumstances in question, even when considered together, were so extreme as to have rendered it unlikely that the defendant would receive a fair trial. And we perceive no basis for the court's holding that Boston's endorsement as a witness for largely foundational purposes, the two discovery violations, and the DORA

17

complaint, considered cumulatively, are such extreme circumstances that they render it unlikely that Kent would receive a fair trial.[6]

¶35 More than anything, the court seemed apprehensive about Brown's motives and strategies. For example, it remarked that the DORA complaint made it particularly obvious that Brown was seeking to penalize Kent above and beyond this criminal prosecution. It also questioned whether Brown had "the ability" to be fair in this case. However, circumstances that may lead a court to harbor suspicions about a district attorney's motives and strategies do not warrant disqualification if they don't render it unlikely that the defendant would receive a fair trial. *Loper*, 241 P.3d at 547.

---

[6] As mentioned, the court recited a number of circumstances beyond the three we have addressed in detail. But the court debunked each of those other circumstances. More specifically, the court found that: (1) the fact that Brown assigned an investigator to the Sheriff's complaint and presented the matter to the grand jury in no way impacted Kent's ability to receive a fair trial; (2) while Brown may have felt threatened by the remarks Kent made during the Leadville incident, "it is sometimes the nature of prosecution to be threatened," and Brown referred the matter to a special prosecutor; (3) though it was "perhaps . . . unusual" for Brown to be so directly involved in this case and to have demanded during plea bargain negotiations that Kent resign from his position, neither was "unheard of"; and (4) the decision to present evidence to the grand jury regarding Kent's alleged perjury could be seen "as either Mr. Brown continuing in his duty" as a prosecutor or as "retaliatory," but no evidence was presented "either way," and, regardless, this did not affect Kent's ability to receive a fair trial. Even assuming the court relied on these other circumstances, it still erred in disqualifying Brown's office. The circumstances present in this case, including in their "totality," are not so extreme as to justify the drastic remedy of disqualification.

¶36 True, the court believed that the circumstances, considered simultaneously, depicted a district attorney who had made this prosecution personal because of a conflict with Kent. However, animosity, alone, is insufficient to warrant disqualification under section 20-1-107(2). *See Loper*, 241 P.3d at 547.

¶37 In *Loper*, we disclaimed the district court's determination that the circumstances advanced warranted disqualification because, "taken together," they "raised serious concerns about the [suspicious] manner in which the district attorney [had] brought the case and '[left] a bad smell.'" *Id.* at 545–46. Though the district court here did not use the "bad smell" nomenclature, it appeared to adopt the same analytical framework as the district court in *Loper*, focusing on concerns related to Brown's potential impropriety based on his discord with Kent. For instance, the court was troubled by the discovery violations because it viewed them as evidence that Brown was attempting to hide the ball from Kent. According to the court, Kent's need to resort to subpoenas duces tecum was the "breaking point." As we've made clear by now, though, the appearance of impropriety created by a prosecutor's conduct is no longer pertinent under section 20-1-107(2). *Loper*, 241 P.3d at 547.

¶38 Because the district court misapplied the law, it abused its discretion. Kent failed to meet his burden of showing actual facts and evidence in the record supporting his assertion that there are extreme circumstances present in this case

19

that render it unlikely that he would receive a fair trial. Accordingly, the district court should have denied his motion.

¶39 To recap, disqualification of a district attorney is "a drastic remedy" that should be granted only in "narrow circumstances." *Id.* As we have cautioned in the past, defendants should not have "the unfettered option of disqualifying a prosecutor." *Id.* at 547–48 (quoting *People v. C.V.*, 64 P.3d 272, 276 (Colo. 2003)). Allowing disqualification under a less demanding standard risks both putting a strain on the system and causing significant problems. *Id.* Because the district court misapplied the "special circumstances" prong of the disqualification statute, it erred.

## IV. Conclusion

¶40 For the foregoing reasons, we conclude that the district court abused its discretion in granting Kent's motion to disqualify Brown's office from prosecuting this case. Accordingly, we reverse the disqualification order and remand for further proceedings consistent with this opinion.

**JUSTICE HOOD** dissents, and **JUSTICE GABRIEL** and **JUSTICE HART** join in the dissent.

JUSTICE HOOD, dissenting.

¶41  In a "comprehensive" written order, maj. op. ¶ 30, the trial court carefully outlined the law and a host of troubling facts.  From its more illuminating vantage point, the court concluded that the defendant's right to a fair trial was in jeopardy, so it chose to disqualify District Attorney Brown's office.  In doing so, it exercised the substantial discretion we purport to afford the court closest to the facts. Because I see no abuse of that substantial discretion here, I respectfully dissent.

¶42  As the majority opinion observes, and neither party disputes, we review the trial court's order disqualifying Brown's office for an abuse of discretion, which occurs if its decision is manifestly arbitrary, unreasonable, or unfair.  If a trial court gets the law wrong, it abuses its discretion.  Maj. op. ¶ 28.

¶43  The majority claims that the trial court abused its discretion by misapplying the law here.  *Id.* at ¶¶ 3, 17.  I disagree.  In discussing the governing legal framework, the trial court correctly identified the controlling statute; acknowledged the demise of the former "appearance of impropriety" standard; accurately recited the defendant's burden of proof; focused on whether "extreme" circumstances demonstrated that the defendant was unlikely to receive a fair trial; and discussed the guiding principles in *People v. Loper*, 241 P.3d 543 (Colo. 2010), and *People v. Chavez*, 139 P.3d 649 (Colo. 2006), to which the majority points today.

1

¶44 Despite this textbook work, the majority concludes that the trial court blundered by ascribing cumulative significance to facts that individually fall short of the governing statutory standard. Maj. op. ¶ 3. But we've never said that such a combination of circumstances would be insufficient to justify disqualification. After all, the many circumstances potentially imperiling a defendant's right to a fair trial defy easy tabulation. Therefore, the totality of the circumstances should be our focus, just as it was for the trial court. *Accord People v. Arellano*, 2020 CO 84, ¶ 30, __ P.3d __ ("[I]n deciding whether special circumstances render a fair trial unlikely, a court need not (and ordinarily should not) evaluate the facts before it in isolation but rather may properly consider all of those facts together to determine whether a defendant will receive a fair trial.").

¶45 While trying to concoct a bright-line test might be as fraught as trying to "nail jello to the wall," maj. op. ¶ 20, we have some important markers to guide us in the sticky task at hand.

¶46 Of course, the Colorado Constitution normally requires elected district attorneys and the attorney general to prosecute criminal cases within their jurisdictions. Colo. Const. art. IV, § 1(1); *id.* at art. VI, § 13; § 20-1-102(1)(a), C.R.S. (2020). And we have long emphasized that "[u]nder the [Colorado] Constitution, the legislature is the only body empowered to circumscribe the duties of the district attorney" and that "such restrictions [should] be construed as narrowly as

possible by the courts." *People ex rel. Losavio v. Gentry*, 606 P.2d 57, 61–62 (Colo. 1980). Indeed, the General Assembly enacted the disqualification statute, § 20-1-107, C.R.S. (2020), "to protect the independence of persons duly elected to the office of district attorney." § 20-1-107(1). The grounds contained in the disqualification statute are thus the only means by which district attorneys can be disqualified from their otherwise constitutionally and statutorily required duty to prosecute. *People v. Kendrick*, 2017 CO 82, ¶ 41, 396 P.3d 1124, 1131. With those thoughts in mind, I turn to the controlling statute.

¶47 Section 20-1-107(2) authorizes the disqualification of a district attorney in a particular case "only" "(1) 'at the request of the district attorney,' (2) 'upon a showing that the district attorney has a personal or financial interest' in the prosecution, or (3) if the court 'finds special circumstances that would render it unlikely that the defendant would receive a fair trial.'" *Kendrick*, ¶ 37, 396 P.3d at 1130 (quoting § 20-1-107(2)). As the majority notes, it is this third prong that is at issue here. Maj. op. ¶ 18 & n.2.

¶48 The party moving to disqualify the district attorney based on "special circumstances" bears the burden of showing that absent disqualification, he or she will not receive a fair trial. *Loper*, 241 P.3d at 546 (noting that, to justify disqualification, the "'special circumstances' must be extreme").

3

¶49 The General Assembly gave criminal defendants the opportunity to seek and obtain the drastic remedy of disqualification under this third, catchall prong for one paramount reason: due process. *Cf. id.* ("Whether it is likely that a defendant will receive a fair trial is the most important inquiry in our decision to disqualify a district attorney.") While the prosecutor and the defendant may be "adversaries," maj. op. ¶ 1, "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate." Colo. RPC 3.8 cmt. 1. Better in some rare instances that we permit another, typically neighboring, elected official to take charge, rather than risk compromising a defendant's right to a fair trial.

¶50 And the trial court responded accordingly. Its recitation of what it found troubling here demonstrates precisely how the sum of the circumstances can be "special," in the sense that it threatens a fair trial, even if the individual circumstances are not:

- Brown obtained a grand jury indictment against Kent for a petty offense after having Brown's staff conduct the investigation;

- Brown threatened to bring or seek a felony charge if Kent didn't plead guilty to that petty offense *and resign from his elected office*;

- after Kent refused and allegedly threatened Brown (which resulted in an investigation, and a no-file decision, by another District Attorney's office), Brown obtained an indictment against Kent for a felony perjury charge;

- Brown, albeit among others, was a percipient witness to the alleged perjury;

4

- Brown complained to the Department of Regulatory Affairs ("DORA"), which concerned the trial court that "the District Attorney is seeking some penalty on Mr. Kent, regardless of the outcome of the criminal prosecution"; and

- Brown's office twice failed to meet its discovery obligations in its criminal action against Kent.

¶51 The trial court concluded as follows:

[W]hile the individual events outlined above may not in and of themselves warrant removal, reviewing them as a whole makes clear that there are special circumstances that make the appointment of a special prosecutor appropriate in this case. There is something personal about the case. Mr. Brown is both seeking a conviction of Mr. Kent and his removal from his position. When Mr. Kent did not agree to Mr. Brown's conditions, Mr. Brown sought additional charges. Then, Mr. Brown reported Mr. Kent to DORA but without disclosing anything to the defense. Mr. Brown did not turn over statements from complaining witnesses or from the investigation regarding the threats. These the defense had to seek out. These documents/statements contain potential impeachment information which certainly relates to the credibility of witnesses and is necessary for the defense to adequately prepare for trial. This pattern raises grave concerns about the ability of the defendant to receive a fair trial with Mr. Brown and his office prosecuting the case.[1]

¶52 Although the trial court seemed to perceive a significant risk that Brown has a personal vendetta against Kent that risks corrupting his trial, the majority

---

[1] This quote refutes the majority's assertion that the court found only three circumstances problematic: (1) the District Attorney investigator's anticipated testimony regarding the alleged perjury; (2) the discovery violations; and (3) the DORA complaint. *See* maj. op. ¶ 30. While the trial court "debunked" certain sources of concern, *id.* at ¶ 34 n.6, it ultimately remained focused on the totality of the circumstances, whether individually innocuous or not.

second-guesses that conclusion and finds this situation to be insufficiently extreme. Maj. op. ¶ 34. But the majority's dismissal of these facts as mere "apprehensi[on] about Brown's motives and strategies," *id.* at ¶ 35, may lead future courts to erroneously reject all disqualification motions that don't meet or exceed the especially egregious facts of *Chavez*, 139 P.3d 649.

¶53 *Chavez* was an easy case: Of course, a district attorney can't prosecute a former client after having confidential conversations relevant to the case. *See Chavez*, 139 P.3d at 654. But if the General Assembly had meant to set the threshold for "special circumstances" at a demonstrable conflict of interest, it would have done so explicitly. Since it did not, we must carefully guard against allowing the first case that cleared the bar to ossify into the standard against which we judge all future claims, especially when that first successful claim cleared the bar by such a wide margin.

¶54 Moreover, the evidence here does more than merely "cast doubt upon [the] district attorney's motives and strategies." *Loper*, 241 P.3d at 547. In *Loper*, the victim's mother was a probation officer in the judicial district of the prosecution and may have influenced the decision to initiate the case against the defendant, but there was no evidence that the resulting trial would be unfair. *Id.* at 545, 547. As the majority observes, the "animosity, alone," of a probation officer "is insufficient to warrant disqualification." Maj. op. ¶ 36. But when the elected

6

district attorney exhibits "personal" animosity, there is more reason to worry about a fair trial.

¶55 By equating the trial court's approach here to the "bad smell" methodology we rejected in *Loper*, maj. op. ¶ 37, the majority takes a case that falls into the gray area between *Chavez* and *Loper* and lumps it in with the duds. But in murky situations like this one when the trial court credits the risk of an unfair trial based on a constellation of significant, but not overwhelming, evidence, I believe we should be more cautious about disturbing that decision. We should hesitate to find an abuse of discretion when the evidence of unfairness, though scattershot, plausibly suggests that the district attorney can't prosecute a defendant objectively due to a palpable, personal animus.

¶56 In reaching this conclusion, I do not mean to disparage District Attorney Brown or defend Kent, let alone condone any of Kent's allegedly intemperate behavior. Instead, I simply believe that on this record we'd do better to show the trial court the deference to which it is entitled.

¶57 Therefore, I respectfully dissent.

I am authorized to state that JUSTICE GABRIEL and JUSTICE HART join in this dissent.