2022 CO 53 The People of the State of Colorado, Plaintiff-Appellant v. Jorge Solis. Defendant-Appellee No. 22SA200
Supreme Court of Colorado, En Banc
November 14, 2022

 Interlocutory Appeal from the District Court Gunnison County
 District Court Case No. 21CR15 Honorable J. Steven Patrick,
 Judge

 Attorneys for Plaintiff-Appellant: Seth D. Ryan, District
 Attorney, Seventh Judicial District Jessica J. Waggoner,
 Chief Deputy District Attorney Montrose, Colorado

 Attorneys for Defendant-Appellee: Megan A. Ring, Public
 Defender Kori Zapletal, Deputy Public Defender Jon W.
 Grevillius, Deputy Public Defender Denver, Colorado

 CHIEF
 JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD,
 JUSTICE HART, and JUSTICE SAMOUR joined.

 JUSTICE GABRIEL dissented.

 OPINION

 BERKENKOTTER JUSTICE

 ¶1
 In this interlocutory appeal, the People challenge the trial
 court's order granting Jorge Solis's motion to
 disqualify the entire District Attorney's Office for the
 Seventh Judicial District ("DA's Office") and
 to appoint a special prosecutor. Solis filed his motion after
 Darren Struble, who formerly represented Solis as a public
 defender in the underlying case, began working for the
 DA's Office that is prosecuting the case against Solis.
There is no question, of course, that Struble is disqualified
 from working on Solis's case.[1] The issue presented here is
 whether, as Solis argued before the trial court,
 Struble's former representation of Solis constituted
 "special circumstances" under section 20-1-107(2),
 C.R.S. (2022), requiring not just Struble's
 disqualification, but also disqualification of the entire
 DA's Office.

 ¶2
 Following a half-day hearing, the trial court found that the
 DA's Office had a screening policy in place and that it
 had taken additional precautions to wall Struble off from
 Solis's prosecution. The court thus concluded Solis had
 failed to establish that special circumstances existed such
 that "it [was] unlikely that [he]

 would receive a fair trial." Id. The trial
 court, accordingly, denied the motion to disqualify the
 entire DA's Office.

 ¶3
 Eight days later, Solis filed a motion for reconsideration
 after learning that Struble appeared for the DA's Office
 during his second day on the job in two unrelated cases
 involving a different former client, Mr. Flores-Molina, in
 violation of the screening policy. The trial court concluded,
 upon reconsideration, that there was a "potential, if
 not likelihood," that Struble would further violate the
 screening policy, so it granted Solis's motion,
 disqualified the entire DA's Office, and ordered the
 appointment of a special prosecutor.

 ¶4
We conclude that the trial court abused its discretion in
 granting Solis's motion. The trial court's
 determination that Struble could potentially deviate from the
 screening policy in the future was based on his appearance in
 Mr. Flores-Molina's case; it was not a determination that
 Struble would violate the screening policy in this case or
 that confidential information from Struble's prior
 representation had not been or could not continue to be
 adequately screened from the attorneys prosecuting
 Solis's case. Because there is no evidence in the record
 that Solis is unlikely to receive a fair trial, we vacate the
 trial court's order disqualifying the entire DA's
 Office. See People v. Kent, 2020 CO 85, ¶ 19,
 476 P.3d 762, 766.

 I.
Facts and Procedural History

 ¶5
 Solis is charged with murder in the first degree, §
 18-3-102(1)(a), C.R.S. (2022), criminal attempt to commit
 first degree arson, § 18-4-102(1), C.R.S. (2022); §
 18-2-101, C.R.S. (2022), and first degree criminal trespass,
 § 18-4-502, C.R.S. (2022). The DA's Office is
 prosecuting this case out of its Gunnison Office.

 ¶6
 The Montrose Regional Office of the State Public Defender
("the PD's Office") has represented Solis
 throughout this case. Struble, who began his employment as an
 attorney with the PD's Office after graduating from law
 school in 2020, was among the public defenders representing
 Solis.

 ¶7
 In January 2022, the elected District Attorney for the
 Seventh Judicial District, Seth Ryan, contacted Struble
 regarding employment opportunities with the DA's Office.
Struble indicated that while he was interested in possible
 alternative employment, he sought a position that was at
 least partially based in Gunnison, and at that time, there
 were no openings in the DA's Gunnison Office. On March
 14, 2022, after learning about an opening in the Gunnison
 Office, Ryan contacted Struble again to discuss possible
 employment. Struble accepted a position in the DA's
 Gunnison Office on March 25, 2022, and resigned from his
 position with the PD's Office that day, after he had a
 conversation with the regional head of the PD's Office.
Struble did not take any files, computers, or notes regarding
 any of his cases when he left.

 ¶8
 Struble was slated to begin work at the DA's Office on or
 about April 18, 2022. On April 13, 2022, Solis filed a motion
 for appointment of a special prosecutor, asking the court to
 disqualify Struble and the entire DA's Office from
 prosecuting his case. In support of his motion, Solis argued
 that Struble obtained a great deal of confidential
 information during the time he represented Solis, and that
 his new role as a deputy district attorney created a conflict
 for him and the entire DA's Office.

 ¶9
 The DA's Office responded the same day, conceding that
 Struble, who had not yet started work, would indeed be
 disqualified from Solis's case. It argued, however, that
 special circumstances did not exist that required
 disqualification of the entire DA's Office because it had
 taken a number of steps, in anticipation of Struble's
 pending employment, to insulate Struble from the prosecution
 of any of his former clients. These included its April 7,
 2022 implementation of a new policy establishing a protocol
 for screening prosecutors from participating in the
 prosecution of former clients ("the screening
 policy").

 ¶10
 The screening policy provided that employees were
 "barred from any participation whatsoever in cases which
 involve the prosecution of [their] former clients, or anyone
 with whom the employee[s] developed an attorney-client
 relationship, in the same or a substantially related
 matter." The screening policy further prohibited
 employees from, among other things, accessing files related
 to

 former clients; consulting with the prosecutor or staff
 involved with the prosecution of former clients;
 "access[ing] any of the photographs, documents, recorded
 interviews, recorded surveillance activities, tangible
 evidence, criminal charges, criminal records, motions filed
 by either party, orders of the court, or any other matter
 related to any case" involving former clients; and
 sharing confidential information revealed during their
 representation of former clients. The screening policy also
 barred employees from appearing on behalf of the DA's
 Office in any court proceedings involving former clients.
Every employee (including Struble once he started work there)
 was required to sign the screening policy.

 ¶11
 The DA's Office further noted that when Ryan hired
 Struble, it obtained a list from "judicial"
 identifying those cases in which Struble was listed as
 counsel. Ryan shared the list and the screening policy with
 the PD's Office and asked it to confirm the list's
 accuracy.

 ¶12
 Finally, the DA's Office argued that, because it knew
 Struble had represented Solis, the prosecutors took extra
 precautions-beyond those required by the screening
 policy-with respect to Solis's case. For instance, the
 DA's Office, which is paperless, has blocked Struble from
 using the e-filing system in this case. It has also done so
 with respect to all 120 clients on the list Ryan sent to the
 PD's Office. Additionally, all work on Solis's case
 is confined to the DA's conference room, which had
 screens erected to cover the room's windows and blockers
 put

 on the door to ensure no one can look into the room. No files
 are kept outside the conference room. Exhibits and other
 evidence in the case are kept there as well. And, as an
 additional precaution, all meetings regarding the case take
 place in this conference room. The DA's Office further
 represented that all major witnesses were advised regarding
 the conflict and instructed to restrict discussions regarding
 the case to that room.

 ¶13
The trial court then set the motion for an evidentiary
 hearing on May 10, 2022.

 ¶14
 On May 3, 2022, an investigator for the PD's Office
 travelled to the DA's Gunnison Office to serve Struble
 and another prosecutor with subpoenas to appear at the May
 10, 2022 hearing. Struble accepted the subpoena from the
 investigator, whom Struble knew from working at the PD's
 Office. The other attorney would not accept service, Struble
 told the investigator, adding that the attorney was
 researching whether he would be prohibited from prosecuting
 Solis's case if he accepted the subpoena.

 ¶15
The trial court held the hearing on the motion to appoint a
 special prosecutor on May 10, 2022, and denied the motion six
 days later in a thoughtful, detailed order. The court
 concluded that Solis had not met his burden of proving that
 it was unlikely he would receive a fair trial if his case
 were prosecuted by the DA's Office, "assuming
 compliance with the policy." Further, the court noted
 that

 no evidence had been presented indicating that Struble had
 disclosed-or would ever disclose-any confidential information
 to the DA's Office. In this regard, the trial court
 credited Struble's testimony that he had not and would
 not disclose any information from his representation of Solis
 to anyone, including anyone associated with the prosecution
 of the case, due to the obvious ethical issues. The trial
 court found that Struble's testimony was not only
 credible, but also consistent with his explanation about why
 he went to law school (a family member was wrongfully
 convicted of murder); why he worked for the Public Defender;
 and, nevertheless, why he ultimately sought employment in
 Gunnison County, where he and his family reside.

 ¶16
 Although the court expressed concern regarding Struble's
 actions on May 3, 2022, with the PD's investigator, it
 concluded that those actions did not involve the disclosure
 of Solis's confidences. The trial court further noted
 that the PD's Office presumably knew that attempting to
 informally serve Struble at the DA's Office increased the
 likelihood that Struble would have to communicate with
 someone in the DA's Office about the subpoena, and thus
 about Solis's case. Finally, the trial court indicated
 that while it presumed strict compliance with the screening
 policy, it also presumed that if the list of
 Struble's 120 former clients was incomplete, the PD's
 Office would promptly supplement the list by identifying

 any missing clients. The trial court then cautioned that it
 would not tolerate any further lapses.

 ¶17
 Solis filed a motion to reconsider on May 24, 2022, after
 learning that Struble appeared on behalf of the DA's
 Office, on his second day on the job, in two unrelated
 misdemeanor cases involving a former client, Mr.
 Flores-Molina. The DA's Office responded, arguing that
 the PD's Office failed to explain how Mr.
 Flores-Molina's cases impacted Solis's case in any
 substantive manner. This disconnect was particularly
 pronounced, the DA's Office asserted, as the PD's
 Office never informed the People that Mr. Flores-Molina-who
 was not identified on the list of Struble's 120
 former clients-had previously been represented by Struble.
The DA's Office emphasized the fleeting nature of
 Struble's prior representation of Mr. Flores-Molina,
 which consisted primarily of argument on bond in Mr.
 Flores-Molina's two misdemeanor cases because once Mr.
 Flores-Molina bonded out, he no longer qualified to be
 represented by the PD's Office. According to the DA's
 Office, the violation of the screening policy demonstrated
 not that Struble would divulge Solis's confidences, but
 rather that the violation occurred because the PD's
 Office declined to respond to multiple requests for
 Struble's prior client list, thus forcing Struble to rely
 on his memory of a former client with whom he had very
 limited interactions.

 ¶18
 In its ruling, the trial court again found that Struble had
 not and would not discuss Solis's case with his new
 colleagues. Nonetheless, the court reasoned that its original
 order denying the motion for a special prosecutor "was
 predicated on the Policy" and the "deviation from
 the Policy . . . suggests the potential, if not likelihood,
 of further such instances and delays in the resolution of
 this case." The court thus granted the motion to
 reconsider, disqualified the entire DA's Office, and
 ordered the appointment of a special prosecutor to move
 forward with Solis's case.[2]

 ¶19
The People then filed an interlocutory appeal of the trial
 court's ruling pursuant to section 16-12-102(2), C.R.S.
(2022).

 II.
Analysis

 A.
Jurisdiction

 ¶20
We first address our jurisdiction to resolve the issue
 presented.

 ¶21
We conclude that this interlocutory appeal from the district
 court's order granting Solis's motion to disqualify
 the DA's Office is properly within our jurisdiction.
See, e.g., Kent, ¶ 16, 476 P.3d at
 765-66; People v. Kendrick, 2017 CO 82, ¶ 33,
 396 P.3d 1124, 1130. Under section 16-12-102(2), "The
 prosecution may . . .

 file an interlocutory appeal in the supreme court from . . .
 a ruling on a motion to disqualify a district attorney
 pursuant to section 20-1-107, C.R.S. [(2022)]."

 B.
Standard of Review

 ¶22
We review the trial court's order disqualifying a
 district attorney's office for an abuse of discretion.
Kent, ¶ 28, 476 P.3d at 768. "A district
 court abuses its discretion when its decision is manifestly
 arbitrary, unreasonable, or unfair." Id.
(quoting People v. Ehrnstein, 2018 CO 40, ¶ 13,
 417 P.3d 813, 816). "If a court grants a motion to
 disqualify a prosecuting office based on a misapplication of
 the law, it abuses its discretion." Id.

 C.
Legal Framework

 ¶23
 The "General Assembly has declared that it is
 'necessary to protect the independence of persons duly
 elected to the office of district attorney.'"
Id. at ¶ 18, 476 P.3d at 766 (quoting §
 20-1-107(1)). To that end, section 20-1-107(2) provides that
 a court may only disqualify an elected district attorney from
 a case under three limited circumstances: (1) when requested
 by a district attorney; (2) when the district attorney has a
 personal or financial interest in the case; or (3) when
 special

 circumstances exist that would render it unlikely that the
 defendant would receive a fair trial.[3]

 ¶24
 These are the exclusive bases for disqualifying a district
 attorney.[4] People v. Loper, 241
 P.3d 543, 546 (Colo. 2010). We focus our attention here on
 the third of these categories, that is, on special
 circumstances that would render it unlikely a defendant would
 receive a fair trial.

 ¶25
 The key to this inquiry, as the statute explicitly provides,
 is whether it is "unlikely that the defendant would
 receive a fair trial." § 20-1-107(2). A defendant
 bears the burden of "establish[ing] facts sufficient to
 support a conclusion that he will not receive a fair
 trial." People v. Perez, 201 P.3d 1220, 1230
(Colo. 2009) (emphasis omitted) (citing People v.
 Lincoln, 161 P.3d 1274, 1279 (Colo. 2007)). To meet this
 burden, the defendant must point to "actual facts and
 evidence in the

 record supporting the contention." Loper, 241
 P.3d at 546. "'[M]ere hypothetical information'
 does not suffice." Kent, ¶ 19, 476 P.3d at
 766 (alteration in original) (quoting Loper, 241
 P.3d at 546).

 ¶26
We do not consider this question on a blank slate. We have,
 on a number of occasions, considered whether special
 circumstances exist to justify the disqualification of an
 entire district attorney's office. These cases make it
 clear that the special circumstances "must be extreme to
 justify disqualifying the district attorney."
Id. at ¶ 20, 476 P.3d at 766 (quoting
Loper, 241 P.3d at 546). This is why, in this
 court's review of trial court disqualification orders
 under this standard, we have identified only one set of
 circumstances that was sufficiently extreme to potentially
 justify disqualification of an entire district attorney's
 office. Kendrick, ¶¶ 43-44, 396 P.3d at
 1131 (referring to People v. Chavez, 139 P.3d 649
(Colo. 2006)).

 ¶27
We described those circumstances in People v.
 Chavez, a case that is particularly instructive with
 respect to our inquiry here. The defendant in Chavez
 filed a motion to disqualify an assistant district attorney,
 Turner, as well as the entire district attorney's office,
 arguing that Turner had previously represented Chavez in a
 substantially related matter and that Turner was privy to
 confidential communications regarding Chavez's pending
 case. Chavez, 139 P.3d at 650-51. The trial court
 granted the motion, disqualifying Turner and the entire
 district attorney's office. Id. at 652.

 ¶28
 After the district attorney's office filed an
 interlocutory appeal, we affirmed the trial court's order
 as to Turner, concluding that his prior attorney-client
 relationship with Chavez and access to confidential
 communications required that he be personally disqualified.
Id. at 654. Then, we turned to consider whether the
 conflict of an individual prosecutor should be imputed to the
 entire district attorney's office. Id. at
 654-55. Rather than automatically imputing the conflict, we
 determined that a properly drafted screening policy would be
 relevant to the trial court's discretionary decision as
 to whether "special circumstances" require
 disqualification of the entire office. Id. We
 concluded,

If the screening policy is adequate, then no disqualification
 is necessary, because there are no special circumstances
 which would mandate disqualification. On the other hand, if
 no screening policy exists or the screening policy is for
 some reason inadequate, the court must determine whether
 confidential information from a prior representation
 nevertheless has been and can continue to be adequately
 screened from others actually prosecuting the case, in view
 of the nature of the particular office and circumstances of
 the prior representation.

Id. Employing that analysis, we remanded to the
 district court to determine whether Chavez could receive a
 fair trial in light of an ambiguity in the district
 attorney's screening policy. Id.

 ¶29
We considered a disqualification question similar to the one
 presented here in People v. Perez, 201 P.3d at 1223.
There, the defendant sought to disqualify the entire district
 attorney's office because an attorney from the Attorney
 General's

 Office who was assisting the district attorney's office
 with the prosecution had previously represented the defendant
 in an unrelated case. Id. at 1225. The attorney
 testified that he neither recalled the defendant nor obtained
 any confidential information while representing him.
Id. at 1225-26. The trial court concluded that
 special circumstances justified the exclusion of the entire
 district attorney's office. Id. at 1228, 1230.
We disagreed, explaining: "[T]he question is
 'whether confidential information from a prior
 representation . . . has been and can continue to be
 adequately screened from others actually prosecuting the
 case.'" Id. at 1229 (quoting
Chavez, 139 P.3d at 655).

 ¶30
 This inquiry, we observed, "strikes an appropriate
 balance between ensuring fairness to the defendant while also
 recognizing the public duty of district attorney's
 offices to prosecute cases arising in their districts."
Id. at 1229- 30 (explaining that, unlike law firms,
 district attorney's offices do not have a choice as to
 whether to accept a case). Applying that test, we concluded
 that the defendant did not meet his burden because he
"presented no facts to show that [the prosecutor] either
 possessed confidential information or passed it to members of
 the DA's Office." Id. at 1230.

 ¶31
 With these legal principles in mind, we turn to the case at
 hand.

 D.
Application

 ¶32
 As noted, the question before us in evaluating whether the
 entire DA's Office must be disqualified pursuant to
 section 20-1-107(2) is whether special circumstances exist
 that render it unlikely that Solis will receive a fair trial.
In his motion, Solis argued that it was unlikely he would
 receive a fair trial because Struble obtained a great deal of
 confidential information during the time he represented
 Solis. To determine if disqualification is necessary under
 these circumstances, we look to whether confidential
 information from Struble's prior representation of Solis
 "nevertheless has been and can continue to be adequately
 screened." Chavez, 139 P.3d at 655.

 ¶33
We conclude that the trial court abused its discretion in
 determining that the answer to this question was
 "no" and in disqualifying the entire DA's
 Office and directing the appointment of a special prosecutor.
To be sure, the trial court's concern about a potential
 or even likely future deviation from the screening policy is
 understandable, particularly as the PD's Office has
 declined to indicate if the names of any of Struble's
 former clients are missing from the list the DA's Office
 sent it back in April. And clearly Mr. Flores-Molina's
 situation illustrates that the list was-at the very
 least-missing his name. But this concern is based on what
 occurred in Mr. Flores-Molina's cases, or what might
 happen if there are other

 former clients of Struble's who are not on the list. It
 is not pertinent to this case as the lawyers are all well
 aware of Struble's conflict as it relates to Solis.

 ¶34
The trial court's apprehension about future violations
 based on Struble appearing for the prosecution in Mr.
 Flores-Molina's cases is also not generalizable to this
 case. The PD's Office's motion is predicated on the
 concern that Struble will share confidential information with
 his new colleagues, not that Struble will knowingly or
 unknowingly appear in court on behalf of the DA's Office
 in Solis's case. Put another way, Struble's violation
 of the screening policy with regard to a different former
 client does not bear on whether Struble "has been and
 can continue to be adequately screened" here.
Id.

 ¶35
 Additionally, there are extra safeguards in place in
 Solis's case that are not in place with respect to
 Struble's other former clients. Struble's unwitting
 violation of the screening policy in Mr. Flores-Molina's
 cases does not indicate that Struble would breach those
 additional safeguards, share confidential information with
 his new colleagues or others, and thus jeopardize his license
 to practice law.

 ¶36
 Here, the trial court relied on hypothetical information in
 deciding to disqualify the entire district attorney's
 office. See Kent, ¶ 19, 476 P.3d at 766. But to
 meet his burden, Solis "must point to 'actual facts
 and evidence in the record supporting the
 contention.'" Id. (quoting Loper,
 241 P.3d at 546). That is to say, a hypothetical violation is
 not enough. Id. And, here, that is all there is.
There is no

 evidence in the record that indicates Struble has violated
 Solis's confidences or that the confidential information
 from Struble's prior representation has not been and
 cannot continue to be adequately screened from the attorneys
 prosecuting Solis's case. Disqualification of the entire
 DA's Office under these circumstances is an abuse of
 discretion.

 ¶37
 Finally, if allowed to stand, the trial court's
 reasoning-that another violation of the screening policy
 could potentially occur-would appear to require
 disqualification of the entire DA's Office as to any
 future prosecution of any of Struble's former clients,
 known or unknown, without any consideration of the special
 circumstances under section 20-1-107(2) that may or may not
 exist. Certainly, the disqualification of an entire DA's
 Office in this many-or any- cases without consideration of
 whether special circumstances exist is an outcome that is at
 odds with the rigorous analysis required by the
 disqualification statute.

 III.
Conclusion

 ¶38
 For the foregoing reasons, we conclude that the trial court
 abused its discretion in granting Solis's motion to
 disqualify the DA's Office.[5] Accordingly,

we reverse the trial court's order and remand for further
 proceedings consistent with this opinion.

 JUSTICE GABRIEL, dissenting.

 ¶39
 The majority concludes that the trial court abused its
 discretion when it disqualified the district attorney's
 office, after warning the district attorney that any further
 violations of his office's ethical screening policy would
 not be tolerated and then another violation came to light.
Maj. op. ¶¶ 4, 33. Because I perceive no abuse of
 discretion on either the facts or the law here, and because I
 worry about the effect that the majority opinion will have on
 our trial judges' authority to manage their courtrooms, I
 respectfully dissent.

 I.
Factual Background

 ¶40
 The material facts of this case are not in dispute.

 ¶41
The People charged defendant Jorge Solis with first degree
 murder, first degree trespass, and attempted first degree
 arson, and public defender Darren Struble and one of his
 then-colleagues entered their appearances for Solis.

 ¶42
 Struble continued to serve as counsel for Solis for
 approximately one year, until he joined the Gunnison,
 Colorado office of the District Attorney for the 7th Judicial
 District, which is the office that filed the charges against
 and is prosecuting Solis.

 ¶43
 It appears undisputed that during his representation of
 Solis, Struble gained client confidences from him,
 participated in plea negotiations with the district
 attorney's office on his behalf, filed motions as his
 counsel, and accessed discovery

 in that capacity. It also appears undisputed that Struble
 appeared on Solis's behalf at most of the hearings in
 this case from the time he entered his appearance in March
 2021 until his departure from the public defender's
 office approximately one year later, less than two months
 before Solis's then-scheduled trial.

 ¶44
 Just before Struble joined the district attorney's
 office, that office adopted an ethical screening policy.
Among other things, this policy prohibited any employee from
 (1) participating in cases involving the prosecution of the
 employee's former clients; (2) accessing a former
 client's file; (3) consulting with the prosecutor or any
 staff member involved in the prosecution of the
 employee's former client; (4) conveying to any member of
 the district attorney's office any confidential
 information revealed to the employee during their
 representation of the former client; and (5) attending or
 representing the district attorney's office for any court
 dates, no matter how minor in nature, regarding the former
 client. In addition, the district attorney obtained from the
 judicial department a list of 120 people whom Struble had
 represented as defense counsel, and Struble himself added
 names to that list.

 ¶45
 Based on the size of the Gunnison district attorney's
 office (then two and now three attorneys), Struble's work
 in this case, and the district attorney's having
 recruited Struble just before trial, Solis moved to
 disqualify the entire district attorney's office pursuant
 to section 20-1-107, C.R.S. (2022), and the trial court's

 inherent authority. The court conducted a hearing on this
 motion, and at this hearing, no one disputed that Struble
 could not be involved in this case. Rather, the question was
 whether the entire office had to be disqualified. District
 Attorney Seth Ryan stated that he had blocked Struble from
 accessing the electronic files in this and other cases in
 which Struble had been defense counsel. In addition, Ryan
 stated that the office's conference room was dedicated to
 this case and that Struble had no access to that room.

 ¶46
 Notwithstanding these assurances, the trial court expressed
 concerns regarding the effectiveness of this screening
 policy. In particular, the court noted that Struble's
 office was next to that of the chief deputy who is
 prosecuting this case and that the doors of the break room in
 the office and the above-described dedicated conference room
 are "perhaps 20 feet apart, they share a portion of a
 wall and the rooms and walls are not soundproof." The
 court further observed that, at the time, there were only two
 attorneys in that office. And the court noted its
 "serious concern" regarding a conversation that
 Struble had had with a defense investigator, which occurred
 after Struble had joined the district attorney's office.
This conversation occurred when the investigator appeared at
 the district attorney's office to serve subpoenas on each
 of the prosecutors in the office in connection with
 Solis's disqualification motion. Struble went out to meet
 the investigator, and Struble told the investigator that a
 prosecutor on this case (Josh

 Dougherty) was not agreeing to accept service, would need to
 be formally served, and was researching whether he and the
 lead prosecutor on the case could continue to prosecute it if
 they were subpoenaed and called as witnesses. Although the
 court found that Struble's actions likely only benefitted
 Solis, it "put in question . . . the effectiveness of
 the efforts to cordon off Mr. Struble from all
 aspects of the Solis case." Describing this incident as
 a "lapse," the court warned the district
 attorney's office, "No further lapses even of things
 as minor as this situation can occur."

 ¶47
 In the meantime, during Struble's first week in the
 district attorney's office, he appeared as counsel on two
 cases in which he had previously represented the defendant.
Notably, while he was with the public defender's office,
 Struble had appeared in court on behalf of this defendant
 more than ten times in those same cases. Nonetheless, Struble
 handled the resentencing hearing in those cases as co-counsel
 for the People. Although the majority appears to fault the
 public defender's office for this significant error
 (crediting the district attorney's assertion that the
 public defender's office never informed the People that
 Struble had previously represented the defendant in that
 case), Maj. op. ¶ 17, in my view, it was Struble's
 responsibility to know that the person standing across from
 him was his former client and to ensure that the list of his
 former clients that the district attorney had obtained was
 accurate.

 ¶48
 Upon learning of these additional violations of the district
 attorney's screening policy, Solis asked the court to
 reconsider its order denying Solis's motion to disqualify
 the district attorney's office. The trial court conducted
 another hearing and found that these additional screening
 policy violations warranted disqualifying the entire district
 attorney's office. The court premised its ruling on the
 fact that the deviations from the screening policy
 "suggest[] the potential, if not likelihood, of further
 such instances and delays in the resolution of this
 case," as well as "the likelihood of further
 motions reciting further violations of the Policy as to other
 former clients."

 ¶49
 The district attorney then filed this interlocutory appeal.

 II.
Analysis

 ¶50
 I begin by setting forth the pertinent legal standards. I
 then proceed to explain why I perceive no abuse of discretion
 here and why I am concerned about the consequences of the
 majority's ruling for trial courts endeavoring to
 exercise their discretion.

 A.
Pertinent Legal Standards

 ¶51
Section 20-1-107(2) provides, in pertinent part:

A district attorney may only be disqualified in a particular
 case at the request of the district attorney or upon a
 showing that the district attorney has a personal or
 financial interest or finds special circumstances that would
 render it unlikely that the defendant would receive a fair
 trial. . . . The motion shall not be granted unless

 requested by the district attorney or unless the court finds
 that the district attorney has a personal or financial
 interest or special circumstances exist that would render it
 unlikely that the defendant would receive a fair trial.

 ¶52
 A party moving to disqualify a district attorney's office
 based, as here, on "special circumstances" bears
 the burden of showing that absent disqualification, the
 movant will not receive a fair trial. People v.
 Arellano, 2020 CO 84, ¶ 24, 476 P.3d 364, 368.

 ¶53
 To establish the requisite special circumstances, the movant
 must provide evidence, and not simply hypothetical
 information, supporting the disqualification. Id.
Moreover, "in deciding whether special circumstances
 render a fair trial unlikely, a court need not (and
 ordinarily should not) evaluate the facts before it in
 isolation but rather may properly consider all of those facts
 together to determine whether a defendant will receive a fair
 trial." Id. at ¶ 30, 476 P.3d at 369. In
 this regard, we have deemed relevant "the size and
 degree of integration of the district attorney's
 staff," People v. Garcia, 698 P.2d 801, 807
(Colo. 1985), as well as the efficacy of the district
 attorney's ethical screening policy, see People v.
 Chavez, 139 P.3d 649, 654-55 (Colo. 2006).

 ¶54
 In addition to the foregoing, a district court has an
 inherent right to disqualify a district attorney's office
 to ensure the integrity of the fact-finding process, the
 orderly and efficient administration of justice, and public
 trust and confidence in our criminal justice system.
Garcia, 698 P.2d at 806. We have

 expressed particular concern when, as here, a defendant's
 prior counsel joins the district attorney's office that
 is prosecuting the defendant:

The potential for unfairness that results when an attorney in
 the district attorney's office has had an attorney-client
 relationship with the defendant is equally present when an
 employee of the district attorney's office has gained
 confidential information about the defendant's cases
 through his employment with an attorney who consulted with
 the defendant. In either case, there is a distinct
 possibility that confidential information could be used to
 the advantage of the government.

People v. Manzanares, 139 P.3d 655, 659 (Colo.
2006).

 ¶55
"District courts have broad discretion in determining
 whether to disqualify a district attorney's office from
 prosecuting a case." Arellano, ¶ 21, 476
 P.3d at 368. A district court abuses this discretion when its
 decision is "manifestly arbitrary, unreasonable, or
 unfair" or when it misapplies the law. Id.

 ¶56
 The question of whether a district attorney's office has
 a screening policy that is sufficient to obviate any special
 circumstances, in turn, presents a fact question for the
 trial judge. Chavez, 139 P.3d at 654. We review
 questions of fact for clear error and will reverse only if
 the court's findings are unsupported by the record.
See Lo Viento Blanco, LLC v. Woodbridge Condo.
 Ass'n, 2021 CO 56, ¶ 17, 489 P.3d 735, 740-41.

 B.
Application

 ¶57
 Applying the foregoing principles here, I see no abuse of
 discretion by the trial court.

 ¶58
 As noted above, the court properly considered all of the
 facts and circumstances before it, including the small size
 and integration of the district attorney's office, the
 length of Struble's prior representation of Solis, and
 the seriousness of the charges at issue, which include first
 degree murder. ¶59 The court also rightly considered the
 fairness of Solis's trial, the orderly administration of
 justice, and the need to ensure the public's trust and
 confidence in our criminal justice system. These factors were
 particularly significant here, given that the trial court
 found, with substantial record support, that the district
 attorney's screening policy was inadequate and had failed
 on multiple occasions. ¶60 And the court's decision
 to disqualify the district attorney's office should not
 have come as a surprise to anyone. The court expressly warned
 the district attorney that no further lapses in the screening
 policy could occur, and when another lapse came to light, the
 court followed through and disqualified the district
 attorney's office.

 ¶61
 In these circumstances, I cannot say that the trial
 court's decision to disqualify the then-two-lawyer
 district attorney's office was manifestly arbitrary,
 unreasonable, or unfair. Nor do I perceive any basis on which
 to conclude that the court misapplied the law. To the
 contrary, I believe that the court's decision was a
 proper exercise of its broad discretion in this area, and I
 would not second-guess that decision here.

 ¶62
 For a number of reasons, I am not persuaded by the
 majority's decision to the contrary.

 ¶63
 First and foremost, Solis, who is facing first degree murder
 charges, among others, will be forced to sit through trial
 wondering what confidential information his former counsel
 might have conveyed to his new colleagues in the district
 attorney's office, even if that information was conveyed
 inadvertently. Given that the stakes are so high for Solis
 here, I would err on the side of caution and affirm the trial
 court's decision to have unquestionably conflict-free
 prosecutors come in to try this case.

 ¶64
 Second, the majority appears to rely heavily on its
 perceptions that (1) Struble's appearance for the People
 in a resentencing proceeding involving his own former client
 was not pertinent to this case (again unduly laying the blame
 for Struble's action and the potential for further
 deviations from the screening policy at the feet of the
 public defender's office), and (2) the trial court
 inappropriately relied on hypothetical information in its
 order disqualifying the district attorney's office.
See Maj. op. ¶¶ 33-36. In my view, the
 majority misunderstands the trial court's ruling. At the
 initial hearing on Solis's motion to disqualify the
 district attorney's office, the trial court expressed
 significant concerns regarding the efficacy of the district
 attorney's screening policy. These concerns were based on
 the physical layout of the office, the fact that there were

 only two attorneys in that office, and an ethical
 "lapse" (Struble's conversation with a public
 defender's investigator) that had occurred. The court
 expressly warned the district attorney's office, "No
 further lapses even of things as minor as this situation can
 occur." And then the court learned of another lapse,
 namely, Struble's appearance for the People in a
 resentencing hearing involving his own prior client. It does
 not matter that this hearing had occurred prior to the later
 lapse with the investigator and in another case. When the
 court learned of this additional lapse, it was persuaded that
 the district attorney's screening policy was ineffective,
 and it followed through on its warning that no further lapses
 could occur.

 ¶65
 Nothing about the foregoing is hypothetical. In a very short
 time span, the record showed two failures of the district
 attorney's screening policy, one of which (appearing as
 counsel against one's own former client in the same
 proceeding in which counsel represented the client) was
 extremely serious. On such facts, I believe that the trial
 court's factual determination that the screening policy
 was ineffectual (and that further deviations were likely) was
 amply supported by the record, and I see no basis to conclude
 that the court's decision to disqualify the district
 attorney's office on the specific facts presented was an
 abuse of discretion.

 ¶66
 Finally, I am concerned about the message that the
 majority's ruling conveys to our colleagues on the trial
 bench regarding their authority to manage their

 courtrooms. If warning parties that further misconduct will
 not be tolerated and following through on that warning
 constitutes an abuse of discretion, then it is difficult for
 me to discern the limit to this court's authority to
 second-guess discretionary decisions made by our trial
 courts. I fear the effect that such a precedent will have on
 trial judges called on to make difficult discretionary
 rulings.

 III.
Conclusion

 ¶67
 For these reasons, I perceive no clear error in any of the
 trial court's factual findings and nothing in the trial
 court's decision to disqualify the district
 attorney's office that was manifestly arbitrary,
 unreasonable, or unfair so as to constitute an abuse of
 discretion.

 ¶68
 Accordingly, I would affirm the trial court's order
 disqualifying the district attorney's office, and thus, I
 respectfully dissent.

---------

[1] Under the Colorado Rules of
 Professional Conduct, "A lawyer who has formerly
 represented a client in a matter shall not thereafter
 represent another person in the same or a substantially
 related matter in which that person's interests are
 materially adverse to the interests of the former client . .
 . ." Colo. RPC 1.9(a).

[2] In its ruling, the trial court
 specifically noted that the PD's Office had declined to
 comment on the list's accuracy, taking the position that
 it was not its responsibility to provide this information to
 the DA's Office.

[3] Prior to its amendment in 2002, we
 interpreted the statute to require disqualification if there
 was an "appearance of impropriety." See,
 e.g., People v. C.V., 64 P.3d 272, 274 (Colo.
2003); see also Ch. 210, sec. 4, § 20-1-107,
2002 Colo. Sess. Laws 758-59. In People in Interest of
 N.R., 139 P.3d 671, 675 (Colo. 2006), however, we made
 it clear that the 2002 amendment to section 20-1-107
 eliminated the appearance of impropriety standard and that
 the circumstances enumerated in the statute were the only
 bases for disqualifying the district attorney. See People
 v. Perez, 201 P.3d 1220, 1229 (Colo. 2009) ("[T]he
 statute enumerates the only circumstances under which a
 district attorney may be disqualified." (emphasis
 omitted)); People v. Loper, 241 P.3d 543, 546 (Colo.
2010) (same).

[4] Of course, disqualification of an
 elected district attorney in this context results in the
 disqualification of his or her entire office.

[5] Consistent with the trial court's
 order, we limit our analysis to the most recent incident in
 question-Struble's violation of the screening policy with
 regard to Mr. Flores-Molina. The May 3, 2022 incident with
 the investigator, in which Struble did not disclose any
 information about Solis, does not affect our
 analysis.

---------